## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

**CARL C. FOSTER,[1]**

> **Plaintiff,**

**vs.**                                              **CIVIL ACTION NO. 2:17-CV-02840**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

> **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security concluding that there was insufficient evidence to support a finding that the Plaintiff was disabled as of January 15, 2015, and therefore, terminating the Plaintiff's Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383f. By Order entered May 11, 2017, (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) as to whether the decision to terminate the Plaintiff's benefits was based on the substantial evidence. Presently pending before the Court are the Plaintiff's handwritten letter construed as his brief requesting reversal of the final decision, and the Defendant's Brief In Support of Defendant's Decision. (Document Nos. 14 and 17.)

---

[1] Throughout the underlying proceedings, Claimant has proceeded *pro se*.

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request to reverse the Commissioner's decision (Document No. 14.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 17.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

## Procedural History

The Plaintiff, Carl C. Foster (hereinafter referred to as "Claimant"), was awarded SSI in a decision dated April 25, 2008. (Tr. at 65-73.) On January 15, 2015, based on updated medical evidence that Claimant's mental impairments were no longer disabling, the Social Security Administration notified Claimant that his disability benefits would cease. (Tr. at 84-86, 92-101.) On January 21, 2015, Claimant requested a reconsideration, but on April 3, 2015, his request was denied. (Tr. at 87-91, 102-104, 174-197.) On April 10, 2015, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 105-108.)

Thereafter, on January 26, 2016, an administrative hearing was held before the Honorable Jon Johnson, ALJ. (Tr. at 24-35.) On May 19, 2016, the ALJ entered a decision finding Claimant's disability ended on January 15, 2015. (Tr. at 9-23.) On June 1, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 6-8.) The ALJ's decision became the final decision of the Commissioner on March 31, 2017 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-3.)

On May 10, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 11 and 12.)

Subsequently, Claimant filed his letter/brief in in support of judgement on the pleadings (Document No. 14.), in response, the Commissioner filed a Brief in Support of Defendant's Decision (Document No. 17.), to which Claimant filed his handwritten letter reply. (Document No. 18.) On September 25, 2017, Claimant filed an "Amendment" to his Complaint with additional evidence concerning a psychological evaluation dated May 14, 2007. (Document No. 19.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 32 years old on the date of the prior decision finding him disabled, and is a "younger person" throughout the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 72.) Claimant has a high school education, a Bachelor's degree in Mass Communications from the University of Charleston, and he then attended graduate school, but he dropped out after his first semester. (Tr. at 40, 55.) Claimant has no past relevant work, having worked several unskilled jobs without any substantial gainful activity. (Tr. at 60, 72.)

**Standard**

Once a claimant has been found disabled under the Act, a presumption of continuing disability arises. See Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted). The Commissioner may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. §§ 1382c(a)(4)(A), 423(f); 20 C.F.R. § 416.994.

To determine whether a claimant continues to be disabled, an ALJ follows a seven-step process for SSI claims. The evaluation processes are essentially the same with the exception of the

first step regarding substantial gainful activity, which applies only to DIB claims. The steps are as follows:

(1) Whether the claimant has an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, the claimant's disability continues. If not, the adjudicator proceeds to step two. 20 C.F.R. §§ 416.920(d), 416.994(b)(5)(i);

(2) Whether there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the comparison point decision ("CPD"), the date the claimant was considered disabled. If so, the analysis proceeds to step three. If not, the adjudicator proceeds to step four. 20 C.F.R. § 416.994(b)(5)(ii);

(3) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's residual functional capacity ("RFC"). If yes, the analysis continues to step five. If not, the analysis proceeds to step four. Id. § 416.994(b)(5)(iii);

(4) Is there an exception to medical improvement? If there is not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (i.e., substantial evidence shows that the claimant has benefited from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), see 20 C.F.R. § 416.994(b)(3), then the adjudicator proceeds to step five. If an exception from the second group applies (i.e., disability determination was fraudulently obtained, ***claimant was uncooperative***, unable to be found, or failed to follow prescribed treatment, see 20 C.F.R. § 416.994(b)(4), the claimant's disability ends. Id. § 416.994(b)(5)(iv) (emphasis added);

(5) Is the claimant's current combination of impairments severe? If so, the analysis proceeds to step six. If not, the claimant's disability ends. Id. § 416.994(b)(5)(v);

(6) Does the claimant possess the RFC to perform past relevant work? If so, the claimant's disability ends. If not, the analysis proceeds to the final, seventh step. Id. § 416.994(b)(5)(vi);

(7) Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If it does, the claimant's disability ends. If not, then the claimant's disability continues. Id. § 416.994(b)(5)(vii).

In an action considering termination of benefits, the claimant still has the burden to prove disability, but the Commissioner has the burden of producing evidence to meet or rebut the presumption that the claimant continues to be disabled. See Sykes v. Colvin, No. 5:15-DV-228-RN, 2016 WL 3129174, at *3 (citing Bellamy, 755 F.2d at 1381).

## Summary of ALJ's Decision

From the outset, the ALJ acknowledged that the issue is whether Claimant's disability ended under Section 1614(a)(3)(A) of the Social Security Act.[2] (Tr. at 12.) The ALJ next determined that Claimant was found disabled by decision dated April 25, 2008; the "comparison point decision" or CPD. (Tr. at 14, Finding No. 1.) The ALJ noted that at the time of the CPD, Claimant had the following medically determinable impairments: Depressive Disorder, NOS; Undifferentiated Somatoform Disorder; Polysubstance Dependence; and Dissocial Personality. The ALJ further noted

> These impairments were found to result in the residual functional capacity to perform work at all exertional levels except that he is limited in performing the following work-related mental activities on a day-to-day basis in a regular work setting. The claimant is moderately limited in the abilities to accept instructions and respond appropriately to criticism from supervisors and to get along with co-

---

[2] Codified as 42 U.S.C. §§ 405(b)(2), 1383(b)(7)(A).

workers or peers without unduly distracting them or exhibiting behavioral extremes. He is markedly limited in the abilities to interact appropriately with the general public, maintain socially [*sic*] behavior and adhere to basis standards of neatness and cleanliness, to maintain regular attendance and be punctual within customary tolerances, to work in coordination or proximity to others without being unduly distracted by them, and to complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without any unreasonable number and length of rest periods. A moderate limitation would interfere with a person's ability to function effectively one-third to one-half of the workday. A marked limitation would seriously interfere with a person's ability to function independently, appropriately, and effectively; he would not be able to perform effectively from one-half to two thirds of the work day, one day to one-third of the work week, for several days to a week out of the month, or for two to three month out of the year.

(Id., Finding No. 2.) Next, the ALJ found that as of January 15, 2015, Claimant had the following medically determinable impairments: influenza; myalgias; neutropenia; vitamin D deficiency; thrombocytopenia; hiatal hernia; leukopenia; chronic marijuana abuse; mitral valve prolapse; palpitations; degenerative disc disease (mild) in the lumbosacral and thoracic spine; and somatoform disorder. (Id., Finding No. 3.)

At the first step in the sequential evaluation, the ALJ found that Claimant's impairments did not meet or equal the severity of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 4.) At the second step, the ALJ found that medical improvement occurred on January 15, 2015. (Tr. at 16, Finding No. 5.) At the third step, the ALJ found the medical improvement related to the ability to work because it resulted in an increase in Claimant's functional capacity for basic work activities. (Id., Finding No. 6.) Proceeding to step five, the ALJ found that beginning on January 15, 2015, Claimant's current impairments considered individually and in combination have not caused more than a minimal impact on his ability to perform basic work activities and that they were no longer severe impairments. (Tr. at 17, Finding No. 7.) Finally,

the ALJ determined that Claimant's disability ended on January 15, 2015 and he had not become disabled again since then. (Tr. at 19, Finding No. 8.)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**

Claimant appeals to the goodwill of the Court, and asserts that he has "suffered tremendously" and that his "lymphatic system is in overdrive and has and still is causing seemingly irrevocable damage." (Document No. 14.) He further contends that he "can barely eat, shower, or clean my personal space." (<u>Id</u>.)

In response, the Commissioner argues that substantial evidence supports the ALJ's conclusion that Claimant was no longer disabled pursuant to the disability cessation rules. (Document No. 17 at 3-4.) The ALJ reviewed all the medical evidence, despite Claimant's refusal to cooperate with the Agency in its review of his case, and properly found that there was a decrease in the medical severity of his impairments since the CPD, and that the improvement was related to Claimant's ability to work. (<u>Id</u>. at 5, 6.) The Commissioner points out that several of Claimant's providers, including treating sources, found Claimant to be "normal" with respect to his impairments and without limits in his ability to perform basic work activities. (<u>Id</u>. at 6.) The Commissioner argues that the final decision is based on substantial evidence and asks that this Court to affirm. (<u>Id</u>. at 7.)

In reply, Claimant argues that not only is his disability is permanent, which shows that the ALJ's decision is incorrect, but he has already demonstrated that he is disabled when he was found disabled initially. (Document No. 18 at 1-2.) Claimant also disputes that any medical evidence has shown that his severe mental illnesses have improved. (<u>Id</u>. at 2-4.) Further, Claimant has not engaged in any work activity that does not show that he had any improvement with respect to his

ability to work. (Id. at 4.) Claimant disputes that Prestera Center's finding his symptoms "moderate" did not include his underlying diagnoses; moreover, treatment notes indicating that he was improved only consider a short time span, and does not consider his impairments. (Id. at 5.) Claimant contends that treatment notes indicating he was feeling well or that he reported no new problems and reduction of marijuana use for anxiety disregards his impairments. (Id.)

Claimant disagrees that any reports exist in the record that his mental health improved to the point that he can perform basic work activities. (Id. at 6.) Claimant disputes the reasonableness of the Commissioner's finding that he can perform basic work activities where his prior medical records were not considered; Claimant asserts that he is college educated and not considering that qualification in assessing his capability of basic work activities is incorrect. (Id. at 6-7.)

In conclusion, Claimant argues that the record, substantial evidence and "public safety" support a finding that the final decision be reversed. (Id. at 7.)

Subsequently, Claimant filed an "amendment" to his Complaint, pointing out that he mistakenly requested attorneys' fees in prosecuting this appeal. (Document No. 19 at 1.) Claimant also attached a psychological evaluation that was performed on him at the West Virginia University School of Medicine on May 14, 2007.[3] (Id. at 4-5.)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Charleston Area Medical Center:

---

[3] Clearly, this report pre-dates the CPD and is not relevant to the appeal of the final decision at bar.
[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. In this case, evidence pertaining to Claimant's mental health issues.

Records from December 2013 indicated Claimant was alert, oriented, pleasant, and cooperative. (Tr. at 298-299, 305-306, 312-319.) 308-309.) Claimant returned in February 2014 due to stomach pains, and again, Claimant was alert, oriented, pleasant and cooperative, presenting with a calm mood and appropriate behavior. (Tr. at 308-309.)

Prestera Center:

Records dated March 31, 2014 indicated that Samantha Kessler, M.A., noted that Claimant's symptoms were well-controlled without psychotropic medication. (Tr. at 247-267). Psychologist Kessler assessed that Claimant experienced no more than moderate symptoms. (Tr. at 251, 266.) Ms. Kessler did not prescribe medications. (Tr. at 265-266.)

Chesapeake Medical Center:

In May 2014, Claimant's treating physician, Nazia Ahmed, M.D., noted that since his last visit in February 2014, "[Claimant] is doing much better . . . [he] is now more active and his energy levels have improved and [are] normal now." (Tr. at 288.) It was noted Claimant was still "smoking marijuana but has cut back." (Id.) Dr. Ahmed previously had advised Claimant that his marijuana use "could be contributing to a lot of his [symptoms]." (Tr. at 283.) Since reducing his consumption of marijuana, Claimant reported that he "feels well" and "his anxiety is controlled." (Tr. at 288.) Dr. Ahmed also noted that Claimant was evaluated at Prestera and no medications were prescribed. (Id.) Dr. Ahmed's comprehensive examination was fully normal except for an absence of knee jerks bilaterally. (Tr. at 289.) In July 2014, Claimant saw Dr. Ahmed for a follow-up visit reporting no new problems, and "feels well overall since he has cut back on marijuana use." (Tr. at 291.)

David Lee Outpatient Cancer Center:

In July 2014, Claimant was seen for follow-up for leukopenia and to "see what my blood

work showed." (Tr. at 406-408.) Claimant was alert, oriented and his mood was normal. (Tr. at 406.) It was noted that Claimant had low white blood cell count for several years, however, he was completely asymptomatic and he reported that it "has never caused him any abnormality or problem." (Id.) A bone marrow biopsy followed, which "was essentially completely normal." (Tr. at 404.)

Function Report:

On October 19, 2014, Claimant reported working out occasionally, that he could prepare meals for himself, such as sandwiches, that he travels by walking or taking public transportation, that he can shop in stores for necessities, pay bills, handle a saving account, use checks, count change, reads as a hobby, and spends time with others, though "not often," including walking and going to parks. (Tr. at 170-173, 177-179.) Claimant stated that it "takes a lot longer and a lot more effort" for his personal care, and that house or yard work take him longer "because it's painful." (Tr. at 171-172.) Claimant alleged that his condition does not allow him to do almost anything "properly or without discomfort" and that he is unable to walk, pay attention, follow written or spoken instructions, get along with authority figures, handle stress or changes in routine well. (Tr. at 174-175.) However, he denies ever having been fired or laid off because of problems getting along with others. (Tr. at 175.) He has more unusual behaviors and fears. (Id.) He denied having any prescriptions of any kind. (Tr. at 175-176.)

State Agency Physicians:

On January 13, 2015, John Todd, Ph.D. attempted a Psychiatric Review Technique. (Tr. at 446-459.) Dr. Todd determined that there was "no medically determinable impairment" and "insufficient evidence" to assess Claimant's case. (Tr. at 446, 458.) It was noted that Claimant did

not keep the consultative evaluation appointment on November 25, 2014, and that he "has not cooperated with the adjudication process . . . has not responded to CE – missed call-in letter; and the alleged letter he returned on approximately 12/11/2014 . . . has NOT been received as of 12/17/2014." (Tr. at 458.) A psychological consultative examination was rescheduled for January 12, 2015, however, despite confirmation of having received the notice of the examination, Claimant indicated that he could not keep the appointment because "it is not in my best interest" and he refused to attend another rescheduled examination. (Tr. at 100, 458.) A cessation of disability determination notice dated January 15, 2015 was sent to Claimant due to "failure to cooperate." (Tr. at 82.)

On January 13, 2015, Ronald L. Hudson, disability examiner, reviewed the relevant medical evidence of record, *supra*, and found "physical is assessed as No MDI (physical)". (Tr. at 81.)

On March 4, 2015, Rosemary L. Smith, Psy.D. attempted a Psychiatric Review Technique, however, she determined there was insufficient evidence, and it was noted Claimant "REFUSED TO ATTEND 2 CES AT THE INITIAL CDR REVIEW – CONTACTED AGAIN ON THE PREHEARING ABOUT GOING TO A MENTAL EXAM – HE REFUSED STATING AGAIN "NOT IN HIS BEST INTERESTS". (Tr. at 245.)

The record contains an undated and unsigned physical residual functional capacity assessment form. (Tr. at 460-467.) The last page contains a brief overview of the medical records of evidence noting "INSUFFICIENT EVIDENCE FOR PHYSICAL ASSESSMENT – BY DR. AMY WIRTS – SEE CDR FORM". (Tr. at 467.)

**The Administrative Hearing**

Claimant advised the ALJ that he understood the purpose of the proceedings was to determine if he continued to be disabled. (Tr. at 27.) He appeared without an attorney, and recognized his right to have representation.[5] (Id.) Claimant recalled that he did not keep his appointment in January for a psychological examination because it was not in his best interest.[6] (Tr. at 29.) The ALJ stated that he would give Claimant another chance to go, however, Claimant advised "I'm still not going." (Id.)

The ALJ warned Claimant that if he did not go to a psychological examination that he would dismiss his case and that his check will stop. (Id.) Claimant advised that he would appeal the decision. (Id.) The ALJ informed Claimant that the two prior psychological evaluations in his case were outdated and that he needed a current one. (Tr. at 30.) Claimant advised the ALJ that he did not want to see a psychologist or psychiatrist that he had not researched. (Tr. at 31.) Claimant advised the ALJ that he wanted the choice of doctor who "has my best interest in mind"; the ALJ then advised Claimant that if he wanted to go to a psychologist of his choice, then he would have to pay for the examination. (Tr. at 32-33.) Claimant informed the ALJ that he would do so, and the ALJ gave him 30 days to submit a new psychological evaluation. (Tr. at 33.) Claimant indicated that he would not be able to afford an evaluation. (Id.)

The ALJ again advised Claimant that if he did not go to the consultative examination, then he would dismiss his case, but if he did attend the examination, then another hearing would be scheduled. (Tr. at 34.) The ALJ informed Claimant that he would not make a decision until he refused to go to the second scheduled examination. (Id.)

---

[5] It is noted that Jan Dils, Esq. appeared on behalf of Claimant at the initial administrative hearing during which he was found disabled. (Tr. at 68.)
[6] In a CE Response Form signed and dated by Claimant on January 5, 2015, Claimant indicated he could not keep his appointment for the psychological evaluation because "it is not in my best interest." (Tr. at 182.)

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

## Analysis

Claimant contends that the ALJ's decision is not supported by substantial evidence because he remains disabled. (Document No. 17.) The undersigned agrees with the Commissioner that the ALJ would have been justified in finding Claimant's refusal to cooperate and dispense with the determination that Claimant had medically improved or that he could engage in substantial gainful activity pursuant to 20 C.F.R. § 416.994(b)(4)(ii). (Document No. 17 at 6.) The Regulations provide the following warning to claimants:

If there is a question about whether you continue to be disabled and we ask you to give us medical or other evidence or ***to go for a*** physical or ***mental examination by a certain date, we will find that your disability has ended if you fail, without good cause, to do what we ask.*** (emphasis added).

The ALJ's decision notes that the record was held open to send Claimant for a psychological consultative examination. (Tr. at 12.) Indeed, another examination was scheduled for February 23, 2016, "and the claimant asked that the examination be rescheduled." (Id.) The examination was rescheduled for March 8, 2016, and once again, Claimant did not keep the appointment. (Id.)

The fact that Claimant failed to cooperate with the Agency is undisputed. Even after review of the relevant medical evidence of record, the undersigned can find no error in the ALJ's analysis, because it simply did not demonstrate Claimant continued to be disabled. Clearly, remand of this matter would be improper because Claimant has shown that he will continue to refuse to cooperate with the Agency in processing this case. Accordingly, the undersigned **FINDS** the final decision of the Commissioner is supported by the substantial evidence, and **FINDS** further that the ALJ's decision finding that Claimant was no longer disabled as of January 15, 2015 complies with 20 C.F.R. § 416.994(b)(4)(ii).

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** Claimant's request for reversal (Document No. 14.), **GRANT** the Defendant's request to affirm the decision below (Document No. 17.), and **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 10, 2017.

Omar J. Aboulhosn
United States Magistrate Judge